Filed 10/22/15  P. v. Alfaro CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESSE ALFARO,<br><br>    Defendant and Appellant. | H040982<br>(Santa Clara County<br> Super. Ct. No. C1370636) |

A jury convicted defendant Jesse Alfaro of three counts of second degree commercial burglary.  The court sentenced him to serve two years in county jail pursuant to Penal Code section 1170, subdivision (h)(5)(A),[1] and imposed various fines and fees.  On appeal, defendant contends there is insufficient evidence to support one of the three convictions.  He also maintains the trial court erroneously imposed a second restitution fine.  We strike the second restitution fine and affirm the judgment as modified.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

*A.      Defendant is Charged*

In an information filed on January 9, 2014, the Santa Clara County District Attorney charged defendant with three counts of second degree burglary (§§ 459, 460, subd. (b)).  The information alleged that defendant entered the Washtime Laundromat with intent to commit theft on November 20, 21, and 29, 2013.

---

[1] Unspecified statutory references are to the Penal Code.

### B.    *Evidence Adduced at Trial*

The case proceeded to a jury trial in March 2014.  Over the course of three days, the following evidence was adduced.

Savnish Aul testified that he and his wife, Shilpa, own the Washtime Laundromat.  They monitor the laundromat using seven surveillance cameras.  The footage from the cameras is available, in real-time, from their home television and cell phones.

On November 21, 2013, Shilpa Aul called the police because she had observed a man taking money from one of the washing machines via surveillance camera footage.  Both of the Auls testified that the coin box on that washing machine had been tampered with.

San Jose Police Officer Jennifer Valosek responded to Shilpa Aul's call on November 21, 2013.  Officer Valosek testified that she collected surveillance footage from the laundromat for November 20 and 21.  She viewed footage from November 21 and noted that the burglary suspect had facial hair and wore a jacket with two patches on it, one with the letters "EMT" and one that looked like a bull's-eye.

Officer Valosek was dispatched to the Washtime Laundromat again on November 29, 2013.  On her way, she recognized the suspect from the surveillance video standing in the doorway of a liquor store; he was wearing the distinctive jacket from the November 21, 2013 video.  Officer Valosek stopped the man, who she identified in court as defendant.  She searched defendant and found 14 quarters and a folding knife.

Washtime Laundromat surveillance videos from November 20, 21, and 29, 2013, were shown at trial.  The videos show footage from one of the laundromat's seven cameras, so the entire laundromat is not visible.

The footage from November 20, 2013, shows defendant enter the laundromat at 20:27:10 wearing the jacket with the EMT and bull's-eye patches.  He walks to the washing machine in the foreground of the frame, which is at the end of a row of top-loading washing machines.  No one else is visible in the frame.  Each machine has a coin

box on the top right side. Defendant places a backpack on the machine to his left and a bundle on a counter to the right. For about a minute, he makes jerking motions with his right shoulder while facing the machine. His hands are not visible in the frame. At one point, he looks directly at the surveillance camera over his right shoulder. He then puts some clothes into the machine, but removes them shortly thereafter without starting the machine. Defendant leaves the laundromat with his belongings at 20:31:24.

The November 21, 2013 surveillance video shows defendant enter the laundromat at 17:53:37 carrying a bundle, a backpack, and a plastic bag. He is again wearing the jacket with the EMT and bull's-eye patches. Defendant walks to the counter directly to the right of the washing machine he stood in front of the day before and puts down the bundle and plastic bag. He stands looking around the laundromat and out the front windows for about a minute and a half. He then takes what appears to be a burrito out of the plastic bag and begins eating it. As defendant is taking out his burrito, another man walks into the frame. It appears the second man was coming from elsewhere in the laundromat. The second man exits the frame, then reenters it and leaves the laundromat at 17:57:24. At 17:57:43, a car parks in front of the laundromat. Approximately 20 seconds later, defendant takes his belongings--including a half-eaten burrito--and exits the laundromat. He returns just over a minute later, walks to the same place he stood earlier, and continues eating his burrito. Another man enters directly behind defendant. The second man, who is also eating food, leaves the laundromat after about two minutes.

Defendant continues eating. He appears to be looking out the front windows as he does so. When he is finished, he throws away his trash. He then returns to the washing machine, where he stands looking out the windows for 30 seconds. Defendant exits the frame and returns with a box of soap. Again, he stands staring out the windows, this time for about two minutes. Pedestrians can be seen walking by occasionally. Defendant leaves the laundromat with his belongings at 18:07:26.

The November 29, 2013 footage shows defendant approach the same washing machine as he did on November 20 and 21 at 17:21:58. Several other people are visible in the laundromat, including two standing a few washing machines away from defendant. Defendant places his jacket over the machine's coin box. He appears to exchange words with the people standing nearby. After looking directly into the camera, defendant exits the laundromat, leaving his jacket behind. He returns less than a minute later and places a pair of pants on top of the washing machine. He then reaches under his jacket with his right hand and makes pulling or jerking motions for about 30 seconds. Defendant again appears to exchange words with the people standing nearby. He then puts his jacket on, hands something to one of the people he spoke with, and exits the laundromat.

Santa Clara Police Officer Christopher Bell testified to a prior burglary offense committed by defendant. At approximately 3:30 a.m. on February 20, 2013, Officer Bell responded to a call about suspicious noises coming from the laundry room in an apartment complex. He found defendant in the laundry room. Also in the laundry room was a blowtorch and a backpack containing screwdrivers, hammers, and pry bars. The lock on one of the washing machines was damaged. Defendant was arrested. The parties stipulated that defendant pleaded no contest to felony commercial burglary in connection with his February 20, 2013 arrest.

### C.     *Verdict, Sentencing, and Appeal*

The jury found defendant guilty on all three burglary counts. On April 11, 2014, the court sentenced defendant to the midterm sentence of two years on count 1 and the midterm sentence of two years on counts 2 and 3, to be served concurrently with the count 1 sentence. The court ordered that defendant serve his time in county jail pursuant to section 1170, subdivision (h)(5)(a). The court orally imposed a $280 restitution fine under section 1202.4, subdivision (b)(2). The sentencing hearing minute order and the

4

abstract of judgment indicate that an additional $280 restitution fine also was imposed, but suspended.[2] Defendant timely appealed.

## II.   DISCUSSION

### A.     *Legal Principles and Standard of Review*

Burglary is the entry of a structure with the intent to commit petit larceny or any felony. (§ 459.) "One may be liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.) "Intent to steal is often proved by circumstantial evidence." (*People v. Abilez* (2007) 41 Cal.4th 472, 508.)

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "The record must disclose substantial evidence to support the verdict-- i.e., evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid.*) "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid.*) We do not resolve credibility issues or evidentiary conflicts. (*Ibid.*) We accept logical inferences the jury might have drawn

---

[2] It is not clear from the record whether that fine was a probation revocation restitution fine imposed under section 1202.44 or a parole revocation restitution fine imposed under section 1202.45. The minute order states "Add'l RF $280 Susp'd PC1202.44/." The line appears to be cut off at the end. The abstract of judgment states "Restitution Fines: [¶] . . . $280 per PC 1202.45 suspended unless parole is revoked." We are not alone in our confusion. The parties indicate the additional restitution fine was imposed pursuant to section 1202.44 but refer to it as a parole revocation restitution fine.

5

from circumstantial evidence and affirm where "the circumstances reasonably justify the trier of fact's findings" (*id.* at p. 358), even if we conclude "the circumstances might also reasonably be reconciled with a contrary finding . . . ." (*Ibid.*)

**B.      *Sufficiency of the Evidence of Defendant's Intent to Commit Theft on November 21, 2013***

Defendant argues there is insufficient evidence of his intent to commit theft on November 21, 2013, such that one of his three second degree burglary convictions must be reversed. We disagree.

There is ample circumstantial evidence of defendant's intent to commit theft. First, defendant previously was convicted of burglarizing a laundry facility. Second, he burglarized the Washtime Laundromat on two other occasions in November 2013. Third, on November 21, 2013, he loitered near the same washing machine he appeared to tamper with on November 20 and 29. Fourth, he did no laundry on November 21, 2013, despite obtaining soap during his visit. Fifth, defendant behaved suspiciously while in the laundromat on November 21. He abruptly left the laundromat when a car parked out front, despite being in the middle of a meal, only to return a minute later. He also stared out the window for long stretches of time. Jurors reasonably could conclude from defendant's behavior that he was attempting to avoid being seen stealing. Taken together, the foregoing evidence supports the conclusion that defendant entered the Washtime Laundromat on November 21 with the intent to commit theft.

**C.      *Probation or Parole Revocation Restitution Fine***

Defendant and the People agree that the $280 probation or parole revocation restitution fine imposed and suspended pursuant to section 1202.44 or section 1202.45 must be stricken as unauthorized. We concur.

Section 1202.44 requires the imposition of a restitution fine where the defendant's "sentence that includes a period of probation . . . ." Section 1202.45, subdivision (a) requires the imposition of a restitution fine where the defendant's "sentence includes a

6

period of parole" or the defendant "is subject to either postrelease community supervision . . . or mandatory supervision . . . ." (*Id.*, subd. (b).) Here, the court stated at sentencing that "[u]pon the defendant's release, there will be no further supervision." Moreover, because defendant was sentenced under section 1170, subdivision (h), he "is not subject to a state parole period after his . . . sentence is completed." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 672, citing § 3000, subd. (a)(1) [parole included in sentence resulting in imprisonment in the state prison].) Accordingly, the imposition of a restitution fine under section 1202.44 or section 1202.45 was an unauthorized sentence that may be corrected on appeal. (*People v. Hamed* (2013) 221 Cal.App.4th 928, 941 [" '[A]n unauthorized sentence may be corrected at any time . . . .' "].)

The additional restitution fine must be stricken for a separate reason--it was not imposed orally at sentencing. When there is a discrepancy between the record of the court's oral pronouncement of judgment and the clerk's minute order, the oral pronouncement ordinarily controls. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Mesa* (1975) 14 Cal.3d 466, 471.) Accordingly, we shall modify the judgment to strike the additional restitution fine and affirm the judgment as modified. (*People v. Mesa*, *supra*, at p. 472.)

## III.  DISPOSITION

The judgment is modified to strike the additional $280 restitution fine imposed pursuant to Penal Code section 1202.44 or Penal Code section 1202.45. The clerk of the trial court is directed to prepare an amended abstract of judgment and to send a copy of the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

7

 

_____
                            Premo, J.

WE CONCUR:

_____
                Rushing, P.J.

_____
                Elia, J.

People v. Alfaro
H040982